IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–03427–KMT

MICHELE LEE BLAKE,

      Plaintiff,

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

## ORDER
_____

      This case comes before the court on review of the Commissioner's denial of Plaintiff

Michele Lee Blake's application for Disability Insurance Benefits ("DIB") pursuant to Title II of

the Social Security Act, 42 U.S.C. §§ 401-33 ("the Act").  Jurisdiction is proper under 42 U.S.C.

§ 405(g).

## PROCEDURAL BACKGROUND

      Plaintiff filed an application for DIB on August 23, 2010.  (Doc. No. 8, Social Security

Administrative Record ("AR") at 150-156.)  Her application was denied.  (AR at 89-99.)  On

October 4, 2010, Plaintiff requested an administrative hearing.  (AR. at 100-101.)  On February

9, 2012, a hearing was held before Administrative Law Judge ("ALJ") John Mr. Dowling.  (AR

at 42-78.)  On February 17, 2012, the ALJ issued a decision denying the DIB application.  (AR at

26-41.)  Plaintiff filed a request for Appeals Council review of the ALJ's decision on March 15,

2012.  (AR at 24.)  On July 16, 2013, the Appeals Council denied Plaintiff's request for review and thereby adopted the ALJ's decision as the final decision of the Commissioner.  (AR at 5-11.)

## STATUTORY AND REGULATORY BACKGROUND

To qualify for DIB, an individual must meet the insured status requirements of the Act, not have attained retirement age, filed an application for DIB, and be under a "disability" as defined in the Act.  42 U.S.C. § 423(a)(1).  The Act states that an individual "shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

## STANDARD OF REVIEW

This appeal is based upon the administrative record and briefs submitted by the parties.  (AR; Opening Br.; Resp. Br.)

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1.      The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
2.      The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
3.      The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
4.      If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

     5.     If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).  *See also Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir.

1988).  The claimant has the initial burden of establishing a disability in the first four steps of

this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  The burden then shifts to the

Commissioner to show that the claimant is capable of performing work in the national economy.

*Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is

conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933

F.2d 799, 801 (10th Cir. 1991).

     Review of the Commissioner's disability decision is limited to determining whether the

ALJ applied the correct legal standard and whether the decision is supported by substantial

evidence.  *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.

1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d

at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.

*Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is

overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v.

Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct

legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v.

Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The court "meticulously examine[s] the record

as a whole, including anything that may undercut or detract from the [administrative law judge's]

findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).  However, the court may not reweigh the evidence or substitute its discretion for that of the Commissioner.  *Thompson*, 987 F.2d at 1487.

## ANALYSIS

**A.** **_Disability under Medical Listing 11.09(C)_**

Plaintiff argues that, at step three, the ALJ failed properly to evaluate Plaintiff under the Medical Listings contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Opening Br. at 10.)

Plaintiff has the burden to present evidence establishing that her impairments meet or equal a listed impairment.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that [her] impairment matches a Listing, it must meet *all* the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severe, does not qualify."  (emphasis in original).

Listing 11.09(C) requires that a claimant establish a diagnosis of multiple sclerosis with:

Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09(C).

Plaintiff argues that Plaintiff's treating neurologist, Dr. Miller, specifically opined that the findings described in Listing 11.09(C) are present.  (Opening Br. at 9 [citing AR at 222].) Plaintiff argues that the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that meet or equal any of the *per se* disabling Medical Listings is clearly contradicted by Dr. Miller's report.  (*Id.* at 10.)

4

Here, although the ALJ did not explicitly discuss Listing 11.09(C), his "findings at other steps of the sequential process . . . provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *See Fischer-Ross*, 431 F.3d at 733.  Specifically, the ALJ gave Dr. Miller's opinion little weight.  (AR at 35.)  Dr. Miller opined that Plaintiff had "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process."  (AR at 222.)  However, as the ALJ pointed out, in her examinations and records, Dr. Miller routinely noted normal motor strength (AR at 232, 235, 228) and, at most, she noted slightly reduced strength on a couple of occasions (AR at 226 [4/5 strength in the lower leg], 230 [4+/5 or 5-/5].)  Similarly, Dr. Shaffer, Plaintiff's later treating physician, found that Plaintiff had full (5/5) strength in all muscles.  (AR at 311.)  Thus, there is no evidence to support Dr. Miller's opinion that Plaintiff had "substantial muscle weakness" "demonstrated on physical examination," as required by the Listings.

The court finds no error in the ALJ's finding that Plaintiff did not meet or medically equal a Listing.  *See Fischer-Ross*, 431 F.3d at 733.

**B.      *Treating Physician Rule***

Next, Plaintiff argues that the ALJ failed to follow the Treating Physician Rule by assigning little weight to Dr. Miller's opinion.  (Opening Br. at 1-13.)

The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a

prolonged period of time." *Williams v. Chater*, 923 F.Supp. 1373, 1379 (D. Kan. 1996).  The

analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically
> acceptable clinical and laboratory diagnostic techniques.  If the answer to this
> question is "no," then the inquiry at this stage is complete.  If the ALJ finds that
> the opinion is well supported, he must then confirm that the opinion is consistent
> with other substantial evidence in the record.  In other words, if the opinion is
> deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 (July

2, 1996)).  A finding that a treating doctor's opinion does not meet the test for controlling weight

does "not [mean] that the opinion should be rejected.  Treating source medical opinions are still

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§

404.1527 and 416.927."  SSR 96-2p, 1996 W L 374188, at *4.  If the ALJ chooses to disregard

the opinion entirely, he must "give specific, legitimate reasons" for doing so.  *Watkins*, 350 F.3d

at 1301.

Here, the ALJ stated,

> I . . . have granted little weight to the opinions of the claimant's former MS
> specialist, Tamara Miller, MD.  Her opinions are not consistent with the totality of
> the evidence of record, including her own physical examinations.  These opinions
> exaggerate the limitations of the claimant and appear to be based solely on the
> claimant's subjective complaints and not on Dr. Miller's objective findings.
> Therefore, I have given Dr. Miller's opinions little weight.

(AR at 36) (citation omitted).

The ALJ described Dr. Miller as Plaintiff's former MS specialist and also gave specific

reasons for not giving Dr. Miller's opinion controlling weight.  (*Id.*)  Moreover, the ALJ's

discussion of the medical evidence and Dr. Miller's examination findings on the two previous

pages of the decision (AR at 34-35) supports the ALJ's decision.  *See Best-Willie v. Colvin*, 514

F. App'x 728, 733 (10th Cir. 2013) (rejecting the claimant's argument that the ALJ did not specifically identify what other evidence allegedly contradicted Dr. Hall's assessed limitations: "Although there was not a contemporaneous discussion of this evidence in discounting Dr. Hall's opinion, in reading the ALJ's decision as a whole, it is evident Dr. Hall's opinion is inconsistent with the record."); *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion.").

Specifically, Dr. Miller opined in a "Multiple Sclerosis Impairment Questionnaire" that Plaintiff had "gait, bowel problems, cognitive, depression, [and] fatigue." (AR at 220). The Commissioner argues that the ALJ properly determined that these findings are inconsistent with the record as a whole. (Resp. Br. at 11-13.) The court agrees. The ALJ noted that Dr. Miller examined Plaintiff four times, in which Plaintiff reported weakness and numbness of her right lower extremity (AR at 33), fatigue and decreased strength sensation in her right leg (AR at 34), and shortness of breath and tingling from the waist down (*id.*). However, the ALJ noted that, on physical examination, Dr. Miller determined in Plaintiff's December 2009 visit that Plaintiff had "some decreased sensation in her right leg, but she had intact tone and strength of her bilateral upper and lower extremities" (AR at 33); in February 2010, Dr. Miller found Plaintiff "had full strength and tone in her bilateral upper and lower extremities, she had intact coordination, and was able to ambulate down the hallway" with "relatively mild" symptoms (AR at 3); in March 2010, Plaintiff reported to Dr. Miller that "her fatigue, decreased sensation, and weakness had all improved" and that Plaintiff had "normal strength, tone, and sensation in her extremities" and "clear speech [and] intact cranial nerves" (*id.* at 34); and in August 2010, Dr. Miller observed

"reduced strength and sensation of the right lower extremity, but her other extremities had full strength and tone without atrophy" (*id.*).

Plaintiff argues that the ALJ improperly rejected Dr. Miller's opinion and substituted his own lay interpretation of the record. The Tenth Circuit has held that an ALJ may not simply reject a treating physician's opinion based on "his or her own credibility judgments, speculation or lay opinion." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (quotation and emphasis omitted). In this case, the ALJ did not reject Dr. Miller's opinion, but discounted it. Moreover, he did so based on record evidence that Dr. Miller's opinion was not supported by the medical evidence.

Plaintiff next argues that the ALJ's decision is not supported by the records of any other examining physicians. (Opening Br. at 12-13). The Commissioner's regulations and rulings make it clear that it is the ALJ's responsibility—not a physician's—to assess a claimant's residual functional capacity. See 20 C.F.R. § 404.1546 (at the administrative hearing level, the ALJ is responsible for assessing your residual functional capacity); SSR 96-5p, 1996 WL 374183, at *2, 4 (the ALJ has the responsibility of determining claimant's residual functional capacity). Indeed, the determination of a claimant's residual functional capacity can often be "dispositive" of the claimant's disability status. *See* 20 C.F.R. 404.1527(e)(2); SSR 96-5p, 1996 WL 374183, at *2. For that reason, residual functional capacity assessments "must be based on all of the relevant evidence in the case record," not just the medical evidence. *See* SSR 96-8p, 1996 WL 374184, at *5 (emphasis added); 20 C.F.R. 404.1545(a). Accordingly, the Tenth Circuit has held that "there is no requirement in the regulations for a direct correspondence

between a[] [residual functional capacity] finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

The court finds no error in the ALJ's application of the Treating Physician Rule.

**C.      *Evaluation of Plaintiff's Credibility***

Next, Plaintiff argues that the Plaintiff's findings regarding Plaintiff's credibility are not supported by the record. (AR at 13-17.)

An ALJ's credibility determinations are generally treated as binding on review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994*); but see Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.' " *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988)); *Hackett*, 395 F.3d at 1173 (same).

The ALJ determined as follows:

Overall, the record includes evidence strongly suggesting that the claimant has exaggerated symptoms and limitations during the hearing; thus, the credibility of the claimant's allegations is substantially weakened through exaggeration and inconsistency. The claimant's medical records indicate that she has never made complaints of weekly nausea to her providers. Further, while the claimant's multiple sclerosis (MS) does appear to remit and relapse in the record, even

9

> during her relapses, the claimant never reported to her providers the degree of
> symptom severity she alleged during her hearing.  Moreover, the claimant has
> received relatively little treatment for her allegedly disabling symptoms.  Her
> testimony regarding her symptoms is inconsistent with her symptoms reports to
> her providers, and therefore I have found her credibility to be questionable.

(AR at 33.)

Plaintiff first argues that the ALJ disregarding records regarding Plaintiff's nausea.  In his

decision, the ALJ noted that Plaintiff testified that she has frequent and debilitating nausea and

migraines so severe that she experiences nausea and vomiting all day.  (AR at 33.)  However, the

ALJ noted that in March 2011, Plaintiff reported to Dr. Shaffer that she had a history of

migraines but she was no longer having them often.  (AR at 34.)  In June and September 2011,

Plaintiff reported to Dr. Shaffer that her migraines had improved.  (*Id.*)  Plaintiff concedes that

while the "treatment records do not reflect [Plaintiff] did complain[ ] of nausea weekly, she did

report this symptom."  (Opening Br. at 15.)  However, a review of the treatment record cited by

Plaintiff reveals that she complained of becoming "nauseated at the very idea of injecting herself

with a needle" (AR at 232) and not because of migraines or other multiple sclerosis related

causes.

Plaintiff also argues that the ALJ erred by criticizing Plaintiff's gap in treatment.

(Opening Br. at 15.)  The ALJ based his credibility assessment, in part, on the fact that Plaintiff

"received relatively little treatment for her allegedly disabling symptoms."  (AR at 33.)

However, a gap in treatment is one of the factors an ALJ may consider in determining a

plaintiff's credibility.  *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1998) ("[I]n

determining the credibility of pain testimony" ALJ may consider "frequency of medical

contacts" and "the extensiveness of the attempts . . . to obtain relief").

Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff only had sporadic relapses and that her symptoms even during these periods were mild and responded to medications.  (Opening Br. at 14.)  However, the ALJ noted that Dr. Miller's treatment records reflected in February 2010, when Plaintiff was seen for increased MS-related symptoms, Dr. Miller characterized the symptoms as "relatively mild."  (AR at 33.)  The ALJ also noted, in August 2010, when Plaintiff was seen by Dr. Miller for another MS flare up, Dr. Miller noted Plaintiff's "symptoms were relatively mild." (*Id.*)   The ALJ also noted that Plaintiff did not report any exacerbation of her MS symptoms from as early as November 2008 through December 2009.  (*Id.*)  The ALJ also noted that, between December 2009 and June 2011, Plaintiff was seen for only two MS flare ups.  (AR at 33-34.)

Upon a review of the record, the court finds that substantial evidence supports the ALJ's credibility determination and the correct legal standards were applied.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("[T]he ALJ did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that plaintiff's allegations of disabling pain were not credible.").

## C.    *New Evidence Before Appeals Council*

Finally, Plaintiff finally argues that Dr. Shaffer's opinion, which Plaintiff submitted only to the Appeals Council, undermines the ALJ's decision and thus requires remand.  (Opening Br. at 16-17.)

The Appeals Council considered a Multiple Impairment Questionnaire dated January 24, 2013 from Dr. Shaffer.  (AR at 6.)  However, the Appeals Council determined as follows:

> Although Dr. Shaffer indicated he first saw you on March 30, 2011 and has seen you several times a year, the record before the Administrative Law Judge, and the

> Appeals Council, shows Dr. Shaffer last saw you on September 2011.  The record
> does not contain treatment notes or medical evidence to support the findings and
> conclusions made by Dr. Shaffer on January 24, 2013.  Therefore, the Appeals
> Council finds that Dr. Shaffer's opinion does not provide a basis for changing the
> Administrative Law Judge's decision.

(*Id.*)

Because the Appeals Council considered Dr. Shaffer's Multiple Impairment Questionnaire, it is a "part of the administrative record to be considered [by this court] when evaluating [the ALJ's] decision for substantial evidence."  *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).  Moreover, a treating physician's opinion should be given controlling weight if it is both well-supported by medically acceptable clinical and diagnostic techniques and consistent with other substantial evidence in the record.  *Watkins*, 350 F.3d at 1300.

In this case, the court agrees that the opinions of Dr. Shaffer in the Multiple Impairment Questionnaire signed on January 24, 2013, do not provide a basis for changing the Administrative Law Judge's decision.  First, the opinions are contrary to the record as a whole, as determined by the ALJ and discussed *supra*.  Second, the Questionnaire is contrary to the medical record regarding Dr. Shaffer's one and only physical examination of Plaintiff on March 30, 2011, where he noted Plaintiff had fluent speech, good naming, good comprehension, good memory, normal gait, normal coordination, full strength in all muscle groups, and although she reported tingling in her right foot, she nonetheless had intact sensation to light touch, temperature, and vibration.[1]  (AR at 311.)  Moreover, the Questionnaire was not accompanied by medical records or clinical findings to support Dr. Shaffer's opinions.  *See Beardsley v. Colvin*,

---

[1] Although Dr. Shaffer met with Plaintiff on several occasions (*see* AR at 303-12), he performed a physical examination only once (AR at 304, 306, 308 [noting he did not have time to examine Plaintiff]).

No. CIV–12–760–D, 2013 WL 3992253, at *9 (W.D. Okla. Aug. 2, 2013) (adopting Commissioner's denial of DIB where plaintiff submitted new treating physician evidence to Appeals Council but treating physician failed to provide objective clinical findings to support her opinion that the plaintiff is disabled).

The court finds no legal error warranting reversal or remand of the Commissioner's decision on this basis.

Accordingly, it is

**ORDERED** that the Commissioner's decision through the Administrative Law Judge is **AFFIRMED.**

Dated this 25th day of March, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge